## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 08-23350-CIV-GRAHAM/TORRES

KING COLE CONDOMINIUM
ASSOCIATION, INC.,

      Plaintiff,

vs.

QBE INSURANCE CORPORATION,
a foreign corporation,

      Defendant.

_____/

## ORDER ON DEFENDANT'S
## MOTION FOR ATTORNEYS FEES AND COSTS

     This matter is before the Court on Defendant's Motion for Attorneys' Fees and

to Tax Costs [**D.E. 169**].[1] After due consideration of the motion, related filings, and the

record in this case, the Court finds, for the reasons discussed below, that counsel be

awarded $272,090.00 in reasonable attorneys' fees and $73,247.25 in costs incurred in

connection with this case, for a total award of $345,337.25.

---

    [1]    In accordance with the provisions of 28 U.S.C. § 636(c), the parties to the above-captioned civil matter, by and through counsel, voluntarily consented to have a United States Magistrate Judge decide the following matters and issue a final order or judgment with respect thereto: (1) Motions concerning discovery, (2) Motions for Costs, (3) Motions for Attorneys' Fees, and (4) Motions for Sanctions. [D.E. 25, 30].

## I.   BACKGROUND

On October 24, 2005, Hurricane Wilma struck South Florida, causing significant damage to property owned by King Cole.  Shortly thereafter, King Cole filed a claim with QBE, its property insurer, pursuant to an insurance policy providing coverage to King Cole for the twelve month period commencing May 9, 2005.  Dissatisfied with QBE's investigation and processing of its claim, King Cole filed suit in the United States District Court for the Southern District of Florida.

The complaint raised claims for declaratory judgment (Count I), breach of contract (Counts II and III), and breach of implied warranty of good faith and fair dealing (Counts IV) [D.E. 1].  The Court dismissed Count IV of the complaint, concluding that a claim for breach of implied warranty of good faith and fair dealing must wait until the conclusion of the litigation with respect to insurance coverage [D.E. 47].

During the pendency of this action, on October 29, 2009, QBE served an Offer of Judgment to the Plaintiff in the amount of $250,000, which expired after 30 days pursuant to Fla. Stat. § 768.79 [D.E. 169 Ex. A].  Thereafter, the Court held a jury trial on January 7, 2010 through January 19, 2010 on King Cole's remaining declaratory judgment and contractual claims.  The jury rendered a verdict in favor of QBE, finding that QBE did not breach the insurance policy at issue [D.E. 152].  Pursuant to the verdict, the Court entered Final Judgment in favor of QBE and denied Plaintiff's post-trial motions [D.E. 153 & 185].

2

Defendant now moves for an award of attorneys' fees pursuant to Florida's offer-of-judgment statute, Fla. Stat. § 768.79.  QBE[2] seeks $326,187.50 in attorneys' fees and $140,617,56 in costs incurred subsequent to October 29, 2009, the date QBE served its offer of judgment on King Cole.  In its opposition, King Cole does not dispute that QBE is entitled to reasonable fees and costs.  Instead, it argues that the amount of fees requested is not reasonable based on some of QBE's proposed hourly rates, the number of hours, vague description of part of the billable work performed on the case.  King Cole also opposes an award of taxable costs because it considers the requested amount excessive and unreasonable.

## II.   ANALYSIS

### A.   *Entitlement to Attorneys' Fees*

Section 768.79 states:

> In any civil action for damages filed in the courts of this state, if defendant files an offer of judgment which is not accepted by the plaintiff within 30 days, the defendant shall be entitled to recover reasonable costs and attorney's fees incurred by her or him or on defendant's behalf pursuant to a policy of liability insurance or other contract from the date of filing of the offer if the judgment is one of no liability.

Fla. Stat. § 768.79(1).[3]  This statute "creates a mandatory right to attorney's fees when the statutory prerequisites have been fulfilled: i.e., (1) when a party has served a

---

[2]     QBE was represented by two law firms; Wicker Smith O'Hara McCoy & Ford, P.A. ("Wicker Smith law firm") and Berk Merchant & Sims, PLC ("Berk law firm").

[3]     Section 768.79 is substantive law for Erie purposes.  *See, e.g., Jones v. United Space Alliance, LLC,* 494 F.3d 1306, 1309 (11th Cir. 2007); *McMahon v. Toto*, 311 F.3d 1077, 1081 (11th Cir. 2002).

demand or offer for judgment, and (2) that party has recovered a judgment at least 25 percent more or less than the demand or offer." *James v. Wash Depot Holdings, Inc.*, 489 F. Supp. 2d 1336, 1340 (S.D. Fla. 2007). We have little discretion to deny attorneys' fees after these criteria are met. *See McMahan*, 311 F.3d at 1083.

It is undisputed that on October 29, 2009, Defendant made an offer of judgment to King Cole to settle all of its claims for $250,000. It is also undisputed that Plaintiff never accepted the offer. Thereafter, QBE obtained a judgment of no liability in its favor. As a result, Defendant has satisfied both requirements under the statute. Accordingly, QBE is entitled to attorneys' fees and costs incurred after October 29, 2009.

### B.   *Amount of Attorneys' Fees*

We turn, then, to the amount of fees to be awarded to the law firms that represented QBE in this case. Both firms filed in support of their request affidavits of J.J. Wicker II and Melissa M. Sims, relevant billing records, as well as an affidavit from an attorneys' fees expert.

We use the federal "lodestar" method to determine reasonable attorneys' fees under § 768.79. *See, e.g., Arnoul v. Busch Entm't Corp.*, No. 8:07-cv-1490-T-24MAP, 2008 WL 5341148, at *3-4 (M.D. Fla. Dec. 19, 2008); *Fla. Patient's Compensation Fund v. Rowe*, 472 So. 2d 1145, 1150-51 (Fla. 1985) (adopting the federal lodestar approach to set reasonable attorney's fees). The lodestar method consists of determining the reasonable hourly rate, then multiplying that number by the number of hours

reasonably expended by counsel. *E.g., Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994); *Norman v. Hous. Auth. of Montgomergy*, 836 F.2d 1292, 1299 (11th Cir. 1988); *Harbaugh v. Greslin,* 365 F. Supp. 2d 1274, 1279 (S.D. Fla. 2005). The applicant seeking fees bears the burden of documenting appropriate hours and hourly rates. *ACLU of Georgia v. Barnes,* 168 F.3d 423, 427 (11th Cir. 1999). In awarding attorneys' fees, "[c]ourts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *Id.* at 428.

When calculating the lodestar amount, the Court first determines the reasonable hourly rate. The Eleventh Circuit defines the reasonable hourly rate to be the "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation." *Norman,* 836 F.2d at 1299. Several well-established factors may be considered in arriving at that prevailing market rate, as set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[4] The party who applies for attorneys' fees is responsible for submitting

---

[4]     The *Johnson* factors are essentially the same as those outlined in *Rowe*. *Rowe*, 472 So. 2d at 1150 n.5. The *Johnson* factors are:

   (1) the time and labor required;
   (2) the novelty and difficulty of the questions;
   (3) the skill requisite to perform the legal service properly;
   (4) the preclusion of other employment;
   (5) the customary fee;
   (6) whether the fee is fixed or contingent;
   (7) the time limitations imposed by the client or circumstances;
   (8) the amount involved and the results obtained;
   (9) the experience, reputation and ability of the attorneys;

satisfactory evidence to establish that the requested rate is in accord with the prevailing market rate. *Duckworth v. Whisenant,* 97 F.3d 1393, 1396 (11th Cir. 1996); *Norman,* 836 F.2d at 1299  (burden lies with fee applicant "of producing satisfactory evidence that the requested rate is in line with prevailing market rates [and] . . . satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits.").  In the end, however, the Court is deemed an expert on the issue of hourly rates in its community and may properly consider "its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Loranger,* 10 F.3d at 781 (quoting *Norman,* 836 F.2d at 1303).

The second component of the lodestar method requires the Court to determine the amount of hours reasonably expended by Plaintiffs' attorney.  This analysis focuses on the exclusion of hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." *ACLU of Georgia,* 168 F.3d at 428 (quoting *Norman*, 836 F.2d at 1301).  This means that the "district court also should exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).  The Court must disallow those hours requested that are excessive and should not be assessed

---

(10) the undesirability of the case;
(11) the nature and length of the professional relationship with the client; and
(12) the awards in similar cases.

*Johnson,* 488 F.2d at 717-719.

against Defendants.   Fee applicants must exercise what the Supreme Court has termed "billing judgment."  *ACLU v. Georgia*, 168 F.2d at 428 (quoting *Hensley*, 461 U.S. at 434).  "[R]easonably competent counsel do not bill hours that are 'excessive, redundant, or otherwise unnecessary."  *Yahoo!, Inc. v. Net Games, Inc.,* 329 F. Supp. 2d 1179, 1183 (N.D. Cal. 2004) (also quoting *Hensley*, 461 U.S. at 434).

Consequently, "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission."  *Id.*  The burden is upon the applicant for fees to submit detailed documentation that will assist the court in determining the amount of fees to properly and reasonably award.  *ACLU of Georgia,* 168 F.3d at 427.  The fee applicant must provide the Court with specific and detailed evidence that will allow the Court to accurately determine the amount of fees to be awarded.  *Id.*

At the same time, the party opposing the fee application must satisfy his obligation to provide specific and reasonably precise objections concerning hours that should be excluded.  *Id.* In the final analysis, however, "exclusions for excessive or unnecessary work on given tasks must be left to the discretion of the district court." *Norman*, 836 F.2d at 1301.

### 1. *Wicker Smith*

Wicker Smith seeks reimbursement of the following amounts for attorneys' fees [D.E. 169 Ex. B]:

| Attorney | Hours | Rate/Hr. | Lodestar |
|---|---|---|---|
| J.J Wicker, II | 219.8 | $180 | $39,564.00 |
| Amy Millan DeMartino | 597 | $180 | $107,460.00 |
| Michael L. Schwebel | 75.9 | $180 | $13,662.00 |
| Nicole Barna | 10.5 | $180 | $1,890.00 |
| Nicholas Seamster | 7.1 | $180 | $1,278.00 |
| Matthew K. Schwencke | 4.8 | $180 | $864.00 |
| Ryan A. Fogg | 21.3 | $180 | $3,834.00 |
| Arturo A. Armand | 1.4 | $180 | $252.00 |
| Thomas J. Chapman | 52.1 | $115 | $5,991.50 |
| Brian Jay Hechtman | 2.1 | $115 | $378.00 |
| Staci Mathis | 253.4 | $115 | $29,141.00 |

**TOTAL FEES REQUESTED**:                         $224,172.00

Plaintiff does not challenge the requested hourly rate of $180 for legal services provided by J.J. Wicker, II.  Plaintiff also does not challenge the rate of $115 for services of Thomas J. Chapman (law clerk), Brian Jay Hechtman (law clerk), and Staci Mathis (paralegal).  It does, however, challenge rates of the remaining attorneys involved in the case.

(a)     *DeMartino Rate*

Plaintiff contends that the hourly rate of $180 for services of Amy Millan DeMartino, who has been admitted to the Florida bar in 2002, is unreasonable in light of the fact that it would be equal to that of Mr. Wicker.  Plaintiff argues that based on Ms. DeMartino's experience, her hourly rate should be $150.

8

Defendant's attorneys' fees expert Michaela D. Scheihing opined that Mr. Wicker's rate was below the range of fees commanded by an attorney of his experience and stature in the South Florida market. Scheihing further opined that Mr. Wicker's reasonable hourly rate should range between $185 to $225.

With regard to Ms. DeMartino, Scheihing concluded that her rate of $180 fell well within the range of fees commanded by lawyers of her experience. We agree. Based on our review of the case and taking into account the relevant *Johnson* factors, including the fact that Ms. DeMartino was one of the lead counsel in this case and has approximately eight years experience practicing law, we find that $180 is a reasonable hourly rate for her services. It is commensurate with the rates charged in this legal community for similar services by lawyers of reasonably comparable skills experience and reputation.

(b)    *Schwebel, Barna, Seamster, Schwencke, Fogg, and Armand Rates*

Plaintiff contends that the hourly rate of $180 for services of Michael L. Schwebel, Nicole Barna, Nicholas Seamster, Matthew K. Schwencke, Ryan A. Fogg, and Arturo A. Armand is unreasonable based on their limited legal experience. Plaintiff points out that none of these six attorneys have been a member of the Florida Bar for more than two years.

Defendant's own expert opined that a reasonable hourly rate for an associate with less than three years of experience ranges between $125-135 per hour. We find Ms. Scheihing's conclusion reasonable after our review of the record. Accordingly, we find that $135 is a reasonable hourly rate for services of Schwebel, Barna, Seamster,

Schwencke, Fogg, and Armand. *See, e.g., Shaker Village Condo. Ass'n, Inc. v. Certain Underwriters at Lloyd's*, No. 08-61935, 2009 WL 2835185, at *2 (S.D. Fla. Sep. 1, 2009) (finding a $147.50 rate for an associate with four years of experience reasonable in a related Wilma insurance coverage litigation).

(c)     *Hours Reasonably Expended*

Wicker Smith seeks compensation for 1,245.4 hours which it claims their attorneys reasonably expended in connection with obtaining a defense verdict in this case. Plaintiff argues that the 1,245.4 hour figure should be reduced because: (1) Ms. DeMartino's billing of 12 hours of more in a single day on sixteen different occasions, to include billing seven times for 15 hours or more and once for 21.3 hours, is inordinate and unreasonable and should be reduced accordingly; (2) travel time is not generally recoverable; (3) Wicker Smith's billing for telephone conference, email exchanges, and other correspondence between its own attorneys is excessive, redundant and unreasonable; (4) charging for having one of its attorneys deliver documents to the courthouse is unreasonable because "delivery time" is not recoverable for paralegals or attorneys; (5) the time of clerical work performed by one of the paralegals is excessive and unreasonable; and (6) Wicker Smith utilized improper "block billing" in some of its entries. As a result, Plaintiff contends that the Court should reject QBE's motion for attorneys' fees pertaining to the law firm of Wicker Smith in its entirety as being extreme and excessive.

Although we do not find an extreme remedy, striking Defendant's motion in its entirety, warranted, we agree with Plaintiff that several of the entries should be

eliminated or reduced.  First, we will not award fees for any travel and delivery time, which we find are not warranted here.  This eliminates 1.4 hours billed to Mr. Armand, 8.9 hours billed to Ms. DeMartino, 6.6 hours billed by Mr. Schwebel, 3 hours billed by Mr. Seamster, 6 hours billed by Mr. Fogg, and 6 hours billed by Mr. Chapman.

Next, we eliminate Ms. DeMartino's hours billed in excess of 12 hours during a non-trial day as unreasonable and excessive.  During each day of the six-day trial, we eliminate hours billed in excess of 14 hours for each given day.  This reduces the amount of hours charged by Ms. DeMartino by 51.5.  We also find excessive and/or duplicative and/or clerical 40 hours paralegal Mathis spent on "marking exhibits" and "reviewing, preparing, and compiling documents" in this case.

Plaintiff contends the Court should not award attorneys' fees for the time Wicker Smith attorneys spent on e-mail and communication amongst each other.  A careful review of the record reveals that Wicker Smith is attempting to recover a total of less than ten hours associated with internal consultation and communication of counsel.  In light of the complexity of the issues and length of the trial, we find the number of hours billed by Wicker Smith to be reasonable on this issue.

Finally, after taking the time to review in painstaking detail the supporting billing records, we conclude that, although there may be some minor instances of block billing and/or lack of specificity, they are not severe enough to prevent a neutral judge from making an assessment of the time expended.  Accordingly, we find that the 1,245.4 hours requested should be reduced by 123.4 hours and Wicker Smith law firm should be compensated as follows:

| Attorney | Hours | Rate/Hr. | Lodestar |
|---|---|---|---|
| J.J Wicker, II | 219.8 | $180 | $39,564.00 |
| Amy Millan DeMartino | 536.6 | $180 | $96,588.00 |
| Michael L. Schwebel | 69.3 | $135 | $9,355.50 |
| Nicole Barna | 10.5 | $135 | $1,417.50 |
| Nicholas Seamster | 4.1 | $135 | $553.50 |
| Matthew K. Schwencke | 4.8 | $135 | $648.00 |
| Ryan A. Fogg | 15.3 | $135 | $2,065.50 |
| Thomas J. Chapman | 46.1 | $115 | $5,301.50 |
| Brian Jay Hechtman | 2.1 | $115 | $241.50 |
| Staci Mathis | 213.4 | $115 | $24,541.00 |
| **TOTAL FEES**: | | | $180,276.00 |

### 2.  *Berk Law Firm*

Berk law firm seeks reimbursement of the following amounts for attorneys' fees

[D.E. 169 Ex. C]:

| Attorney | Hours | Rate/Hr. | Lodestar |
|---|---|---|---|
| Evelyn M. Merchant | 200.2 | $185 | $37,037.00 |
| Melissa M. Sims | 212.8 | $175/$185[5] | $38,626.00 |
| William S. Berk | 2.0 | $175/$185 | $375.00 |
| Gilberto J. Barreto | 0.4 | $165 | $66.00 |
| Sorraya Solages | 35.6 | $150/$165 | $5,455.50 |
| Capri Trigo | 1.2 | $165 | $198.00 |
| Jocelyn Mroz | 1.1 | $165 | $181.50 |
| Raluca S. Neagu | 13.6 | $105 | $1,428.00 |
| Jonathan Tobin | 11.4 | $105 | $1,197.00 |
| Luis R. Rodriguez | 181.4 | $95 | $17,233.00 |
| Ken Martinez | 0.7 | $95 | $66.50 |
| Yami Dehombre | 1.6 | $95 | $152.00 |
| **TOTAL FEES REQUESTED**: | | | $102,015.50 |

---

[5]     The two different hourly rates reflect the rate increase that occurred on January 1, 2010.

Plaintiff does not contend that the hourly rates requested by Berk law firm attorneys are unreasonable or excessive. Instead, it argues that the requested fee of $102,015.50 should be reduced because the time entries lack description and are vague. According to King Cole, these unclear and vague entries preclude the Court from determining whether the time entries are duplicative, excessive, or unreasonable.

As noted earlier, the requirement for specificity in petitions for attorneys' fees is well established. The petitioner must provide detailed time records, so a neutral judge can make an assessment of the time expended, evaluate the need for the services and establish the reasonableness of the fees. *See Hensley*, 461 U.S. at 424. Descriptions joined together in vague block billing, where neither the time spent, nor the assignment of the activity to a purpose can be ascertained, must be adjusted regarding fee calculations. *See also Norman*, 836 F.2d at 1299.

We agree with Plaintiff that the billing records submitted by QBE that relate to the Berk law firm are very vague and non-descriptive. *See* Def.'s Mot. Ex. C [D.E. 169]. Indeed, these documents appear to be merely summary reports rather than a full listings with detailed descriptions. The descriptive entries for a given task include only short entries such as "receive and review," "review/analyze," or "legal research." Such entries clearly do not satisfy the counsel's burden of showing the reasonableness of all services performed to which an award of fees is due.

In its reply, however, QBE supplemented the record and provided billing records that included detailed descriptions of each task performed. Although we are not technically obligated to consider evidence improperly proffered in a reply, failure to do

13

so here would lead to an unwarranted result.  *See* S.D. Fla. L.R. 7.1.C (Reply is "strictly limited to rebuttal of matters raised in the opposing memorandum").

A careful review of the record leads to us to conclude that the Court is capable of making an assessment of the time expended by Berk law firm in this case.  However, certain descriptions were joined together in vague block billing where neither the time spent, nor the assignment of the activity to a purpose, can be ascertained.  Furthermore, the billing records also include multiple entries associated with travel time that is not compensable.  Overall, we conclude that a ten percent across the board reduction of Berk law firm's attorneys' fees request is warranted in order to cure these deficiencies.  That ten percent across the board reduction in the Lodestar reduces the total awardable fees from $102,015.50 to $91,814.00.[6]

### C.    *Entitlement to and Amount of Costs*

QBE also seeks to recover $140,617.56 in taxable costs that they say were necessarily incurred in this case, pursuant to 28 U.S.C. § 1920.  This constitutes $15,206.94 of costs allegedly incurred by the Berk law firm and $125,410.62 of costs allegedly incurred by the Wicker Smith law firm.[7]

---

[6]    An across-the-board reduction is quite appropriate given the extensive number of hours at issue here.  *See, e.g., Villano v. City of Boynton Beach*, 254 F.3d 1302, 1311 (11th Cir. 2001) (affirming a twenty-five percent reduction in hours where the party entitled to fees submitted "extensive" [569.3 hours] amount of hours of compensation because the district court is not expected "to conduct an hour-by-hour analysis" in such a case).

[7]    QBE did not seek to recover costs separately under Fla. Stat. § 768.79.

14

In diversity cases, federal law controls the award of costs.  *Eugene v. 3Don & Partner Estate Group, LLC,* No. 07-80439-CIV, 2009 WL 996016, at *12 (S.D. Fla. Apr. 14, 2009).  Under Fed. R. Civ. P. 54(d)(1), a prevailing party is entitled to recover costs as a matter of course unless directed otherwise by a court or statute.  A strong presumption exists in favor of awarding costs.  *Id.*  A court may tax as costs those expenses enumerated in 28 U.S.C. § 1920.[8]  *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987) (absent explicit statutory or contractual authorization, federal courts are bound by the limitations set out in § 1920).

King Cole does not argue that QBE is not entitled to an award of costs in his litigation.  Instead, King Cole argues that assessment of costs against it must be tempered by considerations of fairness.  In other words, Plaintiff contends that QBE, as a multi-million dollar international corporation, has a minimal need for reimbursement of its costs in this case.  On the other hand, imposition of costs would impose an undue burden on King Cole, a not-for-profit Florida corporation that currently has 19 units in foreclosure and 12 units that are currently more than 30 days

---

[8]    The following costs are permitted under 28 U.S.C. § 1920:

> (1)    Fees of the clerk and marshal;
> (2)    Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> (3)    Fees and disbursements for printing and witnesses;
> (4)    Fees for exemplification and copies of papers necessarily obtained for use in the case;
> (5)    Docket fees under 28 U.S.C. § 1923;
> (6)    Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828.

delinquent in paying their association fees.  In alternative, King Cole argues that QBE's request for costs is woefully inadequate because it does not enable the Court to determine whether the claimed expenses were necessary or reasonable in this case.

With regard to King Cole's first argument, we find that considerations of fairness warrant assessment of costs against Plaintiff.  The fact that QBE is a "multi-million dollar international corporation" is one of the factors why King Cole initiated this lawsuit and sought "millions of dollars in damages."  *See* Complaint ¶ 41 [D.E. 1]. Put differently, were QBE a bankrupt company, this lawsuit may have been pursued differently.  King Cole received an offer of settlement for $250,000.  Knowing that it might be liable for costs - like any other litigant - in the event it were not to prevail on the merits, King Cole gambled and rejected the offer.  The gamble, however, did not pan out the way Plaintiff desired and QBE is now statutorily entitled to taxable costs. We see no reason to entertain a downward adjustment of these costs based simply on Plaintiff's financial status.  Next, we turn to specific individual objections raised by Plaintiff.

### 1.  *Filing Fees and Process Servers*

King Cole opposes Defendant's requested $33,130.24 for the service of subpoenas.  It argues that a substantial portion of the costs sought by QBE for process server fees are not fully taxable because they exceed the rate charged by the United States Marshal's office.   It also argues that costs for certain subpoenas duces tecum issued to individual unit owners are not recoverable because these owners were not called on to testify at trial and the documents were not admitted into evidence.

16

Finally, King Cole contends § 1920 does not provide for recovery of costs for persons who were not actually served, served more than once, as well as fees for "rush service" and "skip tracing."

In the Eleventh Circuit, private process server fees may be taxed pursuant to "§§ 1920(1) and 1921." *U.S. E.E.O.C. v. W & O, Inc.*, 213 F.3d 600, 623 (11th Cir. 2000). The cost, however, cannot exceed the marshal's fees. *Id.* The current rate charged by the Marshal's office is $55.00. 28 C.F.R. §0.114(a). A review of the record reveals that on 45 occasions the private process server fee exceeded the $55.00 fee charged by the Marshal's office. This warrants a reduction of $2,824.00 from the amount requested by QBE.

Next, we find that Defendant is entitled to tax costs for the subpoenas duces tecum that were issued but were not ultimately utilized at trial. *See, e.g., Exemar v. Urban League of Greater Miami, Inc.*, No. 08-20463-CIV, 2009 WL 259677, at *2 (S.D. Fla. Feb. 4, 2009) (granting costs associated with service of a subpoena duces tecum); *Davis v. Sailormen, Inc.*, No. 6:05-CV-1497-ORL-22JGG, 2007 WL 1752465, at *3 (M.D. Fla. Jun. 15, 2007) ("Subpoenas to trial witnesses who [a party] could have reasonably believed were at least partially necessary to the litigation may be taxed as costs.").

28 U.S.C. § 1920 does not permit Defendant to recover costs associated with serving an individual more than once on the same issue, service costs for persons who were not actually served and fees associated with "rush service" and "skip tracing."

These costs are simply not taxable pursuant to the plain language of the statute.  This reduces $3,075.00 from the figure initially requested by QBE.

### 2.  *Transcripts and Court Reporter Fees*

Plaintiff points out that QBE is attempting to recover $29,820.95 in transcript costs, $9,193.14 of which is for the cost of daily trial transcripts.  Plaintiff argues that cost of daily trial transcripts are not taxable under 28 U.S.C. § 1920.  Plaintiff also argues that QBE is improperly attempting to recover costs for items such as "expedited delivery," multiple deposition copies, and "delivery services."

"The question of whether the expense of a daily transcript is to be taxed in favor of the prevailing party is a matter resting largely in the discretion of the trial court." *Syracuse Broadcasting Corp. v. Newhouse*, 319 F.2d 683, 690 (2d Cir. 1963) (citations omitted).  Courts are in agreement that the taxation of costs of a daily transcript may be assessed against a party only where such transcript is "necessarily obtained" for use in the case.  *Galella v. Onassis*, 487 F.2d 986, 999 (2d Cir. 1973) (citing 28 U.S.C. § 1920).  "To assess the losing party with the premium costs of daily transcripts, necessity - beyond the mere convenience of counsel  - must be shown." *Id*.

Here, QBE was represented by four attorneys and a paralegal during the trial, which gave rise to substantial fees being awarded herein for this purpose.  QBE then could have easily relied upon the notes of its attorneys and paralegal rather than obtaining the trial transcript. *See, e.g., Kearney v. Auto-Owners Ins. Co.*, No. 8:06-CV-00595-T-24-TGW, 2010 WL 1856060, at *3-4 (M.D. Fla. May 10, 2010) (denying daily transcript taxation of costs where a party had "two lawyers and an experienced

18

paralegal at counsel's table who could have taken notes on the testimony."). Thus, the transcript was clearly not "necessarily obtained" for use of counsel and the Court. Therefore, in the exercise of our discretion, we will not tax the cost of the daily transcripts totaling $9,193.14.

We also sustain King Cole's objection as to costs associated with items such "expedited delivery," multiple deposition copies, and "delivery services." As Plaintiff correctly points out, QBE's motion does not explain how these fees were necessary in this case. Accordingly, we will reduce an additional $5,678.35 from QBE's originally requested taxable costs for fees associated with these services.

### 3. Photocopying Costs

QBE attempts to recover $77,666.37 in copying costs. King Cole opposes this request arguing that QBE did not explain why and how such costs were reasonably necessary to the prosecution of the case. King Cole also points out that more than half of the amount that QBE is attempting to recover for copying costs are for copying trial and deposition exhibits, without any explanation of exactly what these "exhibits" entail. King Cole emphasizes that trial exhibits are generally not taxable as costs. Finally, King Cole argues that costs for items such as binders, folders, labeling, and Bates stamping should not be taxed because these are merely "incidental expenses."

Court may tax the costs of copies which were "necessarily obtained for use in the case." 28 U.S.C. § 1920(4); *U.S. E.E.O.C.*, 213 F.3d at 622-23; *Desisto College, Inc. v. Town of Howey-in-the-Hills*, 718 F. Supp. 906, 913 (M.D. Fla. 1989) (copies of pleadings, discovery, documents tendered by the opposing party and documents

19

prepared for the court's consideration constitute recoverable costs).  The party moving for taxation of costs must present evidence "regarding the documents copied including their use or intended use." *Cullens v. Georgia Dept. of Trans.*, 29 F.3d 1489, 1494 (11th Cir. 1994).  As the prevailing party alone knows the purpose of the copies, it cannot simply make unsubstantiated claims that copies of the documents were necessary. *Helms v. Wal-Mart Stores, Inc.*, 808 F. Supp. 1568, 1570 (N.D. Ga. 1992); *see, e.g.*, *Ferguson v. Bombardier Serv. Corp.*, No. 8:03-CV-544-T-30MSS, 2007 WL 601921, at *4 (M.D. Fla. Feb. 21, 2007) (copies of checks paid to copy service companies without explanation of underlying charge were not properly charged).  Rather, the prevailing party must provide information regarding the purpose of copies charged so the court will be able to determine the purpose of the copies as well whether the rates paid for copies were reasonable, and whether the copies were related to the action at issue.  *See, e.g.*, *Lee v. American Eagle Airlines, Inc.*, 93 F. Supp. 2d 1322, 1335-36 (S.D. Fla. 2000) (denying copying costs where prevailing party failed to provide description of copies, including why rates paid were reasonable or how expenses related to case).

In evaluating whether copies were necessary, the court does not award costs for copies made merely for counsel's convenience, such as multiple copies of documents. *Helms*, 808 F. Supp. at 1570.  Similarly, general copying costs without further description are not recoverable.  *Duckworth*, 97 F.3d at 1399; *Fogleman v. ARAMCO*, 920 F.2d 278, 286 (5th Cir. 1991) (losing party "should not be held responsible for

multiple copies of documents, attorney correspondence, or any of the other multitude of papers that may pass through a law firm's Xerox machines").

In support of its request for the costs of copies, Defendant has included more than 100 invoices for various copying services. As Plaintiff correctly points out, these documents are very vague as they only describe the task performed as "photocopies," "photocopies - LETTER," or "photocopies-PLDGS." *See, e.g.*, Def.'s Mot. Ex. 10 at 2 [D.E. 169-14]. Other invoices fare no better as they only describe the purpose of the photocopying task as "King Cole" or "Trial." *See, e.g.*, Def.'s Mot. Ex. 11 at 17, 20 [D.E. 169-15]. The invoices also include multiple charges for tangential non-recoverable items such as CDs and binders.

After a careful review of Defendant's motion and the documents submitted in support of said motion, we conclude that QBE has failed to substantiate how the copying charges requested were all related to documents "necessarily obtained" for the use in this case. In its reply, Defendant points out that majority of the costs relate to copying the voluminous trial exhibits. Defendant states that a full copy of a the entire set of exhibits was delivered to Judge Graham upon a request from his chambers. However, that explanation does not support the excessive amounts of copying and printing costs included in this application.

Other than the vague invoices described above and conclusory statements made in its motion, Defendant has provided little information regarding the purpose or use of any of the photocopies that QBE seeks to recover as costs. Therefore, the costs related to copying must be reduced and/or disallowed.

Based on the analysis listed in this section a substantial amount for copying charges for documents necessary at trial is justified but not to the extent requested. The Court will reduce the total amount of copying costs requested in QBE's petition by 60 percent from $77,666.37 to $31.066.55.

Accordingly, we find that Defendant is entitled to the following costs: 1) $27,231.24 for filing and process server fees; 2) $14,949.46 for transcript and court reporter fees; and 3) $31,066.55 for copying costs for a total sum of $73,247.25.

### III.   CONCLUSION

For the foregoing reasons, it is hereby ordered that:

1.      Defendant's Motion for Attorneys' Fees and to Tax Costs [**D.E. 169**] is **GRANTED** in part and **DENIED** in part.

2.      Defendant shall be awarded a total of $272,090.00 in reasonable attorney's fees ($180,276.00 for the Wicker Smith law firm and $91,814.00 for the Berk law firm).

3.      Defendant shall be awarded a total of $73,247.25 in taxable costs.

**DONE AND ORDERED** in Chambers at Miami, Florida this 29th day of September, 2010.

_/s/   Edwin G. Torres_
EDWIN G. TORRES
United States Magistrate Judge